UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

ORAZIO BONOCORE and
LISA BONOCORE,

        Plaintiffs,

    -v-                                   No.  05 Civ. 6422 (LTS)(GWG)

VORNADO REALTY TRUST, et al.,

        Defendants.

--------------------------------------------------------x

## OPINION AND ORDER

APPEARANCES:

SILBERSTEIN, AWAD & MIKLOS, P.C.
  By:  Denis G. Kelly, Esq.
      Paul Nicholas Nadler, Esq.
600 Old Country Road, Suite 412
Garden City, NY 11530

*Attorneys for Plaintiffs*

FABIANI AND COHEN, L.L.P.
  By:   Thomas J. Hall, Esq.
      Andrew Zombek, Esq.
570 Lexington Avenue, 4th Floor
New York, NY 10022

*Attorneys for Defendants*

LAURA TAYLOR SWAIN, United States District Judge

In this diversity action for money damages, Plaintiff Orazio Bonocore ("Bonocore") brings claims for physical injuries under New York State Labor Law §§ 200, 240(1) and 241(6) and for common law negligence, against Defendants Vornado Realty Trust ("Vornado"), Bovis Lend Lease ("Bovis"), 731 Retail One LLC ("731 Retail One"), 731 Commercial Holding , LLC ("731 Commercial Holding"), Alexander's, Inc. ("Alexander's"), 731 Residential, LLC ("731 Residential"), 731 Commercial, LLC ("731 Commercial"), 731 Residential Holding, LLC ("731 Residential Holding") and 731 Limited Partnership (collectively, "Defendants").  His spouse, Plaintiff Lisa Bonocore, brings derivative claims for loss of spousal consortium.  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332.

Defendants move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on all claims.  Plaintiffs cross-move for partial summary judgment on Bonocore's Section 240(1) claims.  Both sides request the preclusion of certain evidentiary proffers.  The Court has reviewed thoroughly the parties' submissions.  For the reasons that follow, Defendants' motion for summary judgment is granted in part and denied in part, and Plaintiffs' cross-motion for partial summary judgment is denied.

## BACKGROUND

The following material facts are undisputed unless otherwise noted.

On September 1, 1999, Bovis entered into a contract with 731 Limited Partnership, agreeing "to perform construction management and general construction work with respect to the construction of a mixed-use 54 story retail, office and residential project" at 731 Lexington Avenue, New York, New York.  (Pls.' Mot. for Summ. J. Ex. N at 2.)  The contract provided that Bovis "shall, in coordination with the Subcontractors, establish, implement and observe all safety,

health and environmental protection measures during performance of the Work, consistent with the requirements of the Williams-Steiger Occupational Safety and Health Act of 1970 ["OSHA"]."  (Id. at 12.)  "Subcontractors" was defined as "an entity or person engaged directly by [Bovis] . . . who performs a portion of the Work for [Bovis] pursuant to a contract."  (Id. at 4.)  Bovis agreed to "be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Work.  However, Subcontractors shall have primary responsibility for Project safety."  (Id. at 46.)  In addition, Bovis agreed to "take reasonable precautions for safety of, and [to] provide reasonable protection to prevent damage, injury or loss to employees on the Work . . . ."  (Id.)  The contract provided that Bovis "shall be responsible for all Subcontractor work as if it had been performed by [Bovis's] own forces."  (Id.)  Neither Bonocore nor the subcontractor who employed him was a party to the contract.

Plaintiffs proffer a safety manual entitled "Safety and Environmental Management System" ("SEMS"), which, according to the manual, served as an outline of Bovis's safety standards and goals.  (Pls.' Ex. K.)  The manual contained several references to OSHA standards and provided specifically that, for work taking place at an elevation of six feet or more, fall protection systems were required.  (Id. at 91.)

On July 24, 2002, Bovis entered into a contract with North Side Structures, Inc. ("North Side"), which is not a defendant in this action, in connection with the construction project. The contract referred to Bovis as the "Contractor" and North Side as the "Subcontractor."  (Pls.' Ex. O.)  The contract provided in relevant part that, "where workers or material could fall more than six (6) feet, suitable fall protection devices such as harnesses, nets, etc., must be provided by Subcontractor and used by Subcontractor."  (Id. at 9.)  In addition, the contract provided that, "Subcontractor must comply in full with all applicable environment, health and safety . . . local and

national legislation, including all OSHA regulations." (<u>Id.</u>)

        In connection with the construction of the building at 731 Lexington Avenue, Bovis held weekly on-site progress meetings in order to coordinate subcontractors, and Bovis representatives interacted with North Side daily to find out if North Side had any questions.  (Dep. of Geoffrey Butler at 25:2-9; 26:15-20; 109:17-110:9, annexed as Pls.' Ex. H.)  Bovis also held safety meetings and had a safety representative on the site on a daily basis, who had the authority to stop any work he determined might be unsafe, and Bovis held safety orientations and training for the subcontractors' employees before they entered the construction site for the first time.  (<u>Id.</u> at 78:7-25; 90:24-91:10; 124:19-23.)  Geoffrey Butler ("Butler"), a superintendent for Bovis (<u>id.</u> at 5:20-22), was present at the construction site on most weekdays, and his job duties included coordinating the design of the building with the construction of the building, making sure the subcontractors were building pursuant to the design documents and answering questions the subcontractors had about the design documents.  (<u>Id.</u> at 14:3-5; 14:19-15:3, 15:4-8, 18:7-14.)

        Bonocore was an employee of North Side, working as a signal man at the construction site at all relevant times.  Bonocore's job duties included unloading crane sections, which were about 10 feet tall, off of trucks so that the crane sections could be combined to form a tower crane for use in building construction.  To unload the crane sections, Bonocore had to hook up each crane section manually, through cables that were wrapped around the crane section, to a large hook that hung at the end of a vertical, heavy steel cable called a "load line."  The load line itself hung from a separate crane, and would then lift the crane section and place it in a specified area where the crane sections would be combined to form a tower crane.  (<u>See generally</u> Dep. of Orazio Bonocore 9, 12, 18, 35, annexed to Decl. of Andrew Zombek dated Jan. 30, 2008, as Ex. F.) Bonocore testified that no one from Bovis or Vornado ever instructed Bonocore how to unload

crane sections or as to his precise job role, and there is no testimony or evidence that Bonocore was instructed by any other Defendant as to how to perform his job duties.  Bonocore testified that he was supervised by a North Side foreman.  (Id. at 21:24-24:10.)

On October 3, 2003, Bonocore was injured in his groin and/or right hip area in the course of performing his job duties.  The parties dispute the circumstances of the accident. Defendants proffer accident reports, whose admissibility is challenged by Plaintiffs, purporting to demonstrate that, while Plaintiff climbed the interior ladder of the crane, he felt a pop or strain in his groin or right hip area.  (Zombek Decl. dated Feb. 19, 2008, Exs. AA, BB.)

Plaintiffs proffer a different scenario, as recounted through Bonocore's deposition and affidavits.  Bonocore testified at his deposition that he was on top of the crane section when the injury occurred, about 10 feet off of the ground.  (Bonocore Dep. at 35:17-23.)  However, his deposition transcript also contains testimony that, at the time of the injury, he was wearing a hard hat but was not wearing a "safety belt" and that he did not need to wear a safety belt because he was working "down below" at "street level."  (Id. at 26:18-28:2.)

Bonocore testified that he had both legs wrapped around part of the crane section and was attempting to hook the load line to the crane section when the load line suddenly swayed. (Bonocore Dep. at 36:2-11.)  According to Bonocore, the load line sways "a lot," and no precautions could be taken to prevent the load line from swaying.  (Id. at 29:10-14.)  Because he was maintaining his grip on the load line, the sway pulled him a couple of feet, causing his left side to hang off of the crane section while his right leg was wrapped around the frame of the crane section.  (Id. at 37:4-22.)  As a result, he immediately felt a popping sensation in his right hip area, though he did not fall off the section and hit the ground.  (Id. at 40:25.)  Bonocore averred that his right leg was braced tightly to the crane section to prevent him from falling, and that he would not

have had to brace the section with his right leg had he been wearing "safety equipment" that would have prevented him from falling.  (Bonocore Supp. Aff. dated Feb. 18, 2008, annexed to Opp'n as Ex. A ¶ 3.)

The parties proffer evidence purporting to demonstrate that several of the defendants were owners of the land and/or the building prior to or at the time of the accident.  According to publicly recorded deeds, 731 Residential Holding and 731 Commercial Holding transferred title to the land and the building on 731 Lexington Avenue to 731 Residential and 731 Commercial, respectively, prior to the accident.  (Zombek Decl. Exs. V, W.)  Plaintiffs proffer testimony by Daniel Berger ("Berger"), a vice president of Vornado involved in property development, that Vornado was also an owner of both the land and the building at 731 Lexington Avenue at the time of the accident.  (Dep. of Daniel Berger at 6:22-7:3, annexed as Pls.' Ex. M.)  Vornado created 731 Commercial for the purpose of developing the project, and it was "just another entity of the owner and acted the same way as Vornado did."  (Id. at 17:9-12.)[1]  Vornado also created 731 Limited Partnership, which was also an owner of the property at the time of the accident, and whose agents were also Vornado employees who "frequently" visited the job site to check on the progress of Bovis and the construction of the building.  (Id. at 16:4-8; 19:18-20; 20:6-11; 49:1-5.)  In addition, Alexander's, which was itself owned by Vornado, was an owner at the time of the accident but only with respect to the building.  (Id. at 50:8-11.)  No evidence is proffered with respect to 731 Retail One.[2]

---

[1]    Berger did not explain the relationship, if any, between 731 Residential and Vornado, only that 731 Residential was a corporation that controlled the residential component of the building.  (Berger Dep. at 17:19-21.)

[2]    See Berger Dep. at 50:12-15 (Q: "On October 3, 2003, did 731 Retail One, LLC own any parts of the Lexington Avenue building?  A: I'm not familiar with that entity.")

DISCUSSION

Summary judgment shall be granted in favor of a moving party where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In the summary judgment context, a fact is material "if it 'might affect the outcome of the suit under the governing law,'" and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (alteration in original)).  On cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  Schwabenbauer v. Bd. of Educ. of Olean, 667 F.2d 305, 314 (2d Cir. 1981).

*New York Labor Law § 200 and Common-Law Negligence*

Section 200 of the New York Labor Law, which provides generally for "reasonable and adequate protection to the lives, health and safety" of employees, N.Y. Lab. Law § 200 (West 2002), codifies an owner's or general contractor's common-law duty to maintain a safe construction site.  See Russin v. Louis N. Picciano & Son, 54 N.Y.2d 311, 316-17 (N.Y. 1981); Burkoski v. Structure Tone, 40 A.D.3d 378, 380 (1st Dep't 2007).  To prevail on a Section 200 or

common-law negligence claim against an owner or general contractor, "a plaintiff must prove that the party so charged exercised direct supervisory control over the manner in which the activity alleged to have caused the injury was performed."  Id. at 380-81.[3]  Evidence that an entity "may have had overall responsibility for the safety of the work done by the subcontractors . . . [is] insufficient to raise a question of fact as to [the] negligence of the general contractor itself."  Id. at 381 (quoting O'Sullivan v. IDI Cosntr. Co., Inc., 28 A.D.3d 225, 226 (1st Dep't 2006)).  "The retention of the right to generally supervise the work, to stop the contractor's work if a safety violation is noted, or to ensure compliance with safety regulations, does not amount to the supervision and control of the work site necessary to impose liability on an owner or general contractor pursuant to Labor Law § 200."  Dennis v. City of New York, 304 A.D.2d 611, 612 (1st Dep't 2003).  "This rule is an outgrowth of the basic common-law principle that 'an owner or general contractor [s]hould not be held responsible for the negligent acts of others over whom [the owner or general contractor] had no direction or control' . . . ."  Ross v. Curtis-Palmer Hydro-Electric Co., 81 N.Y.2d 494, 505 (1993) (citation omitted).

        In this case, Plaintiffs have proffered no evidence that any Defendant had any direct supervisory control over how Bonocore was to perform his job in unloading the crane sections. Therefore, there is no genuine issue of material fact precluding summary judgment in Defendants' favor with respect to Plaintiffs' Section 200 and common-law negligence claims.  See O'Sullivan,

---

[3]        Some decisions require, in addition, that the owner or general contractor must also have had actual or constructive notice of the alleged defect which caused the injury at issue.  See, e.g., Singh v. Black Diamonds LLC, 24 A.D.3d 138, 140 (1st Dep't 2005) ("liability can only be imposed if defendant exercised control or supervision over the work and had actual or constructive notice of the purportedly unsafe condition"); Dowd v. City of New York, 40 A.D.3d 908, 910 (1st Dep't 2007) (violation of Section 200 and common-law duty requires "showing that [defendant] had control over the work site and had actual or constructive notice of the dangerous condition").

28 A.D.3d at 226 (granting summary judgment for defendant, noting, "Absent any evidence that [defendant] gave anything more than general instructions as to what needed to be done, as opposed to how to do it, these entities cannot be held liable under Labor Law § 200 or for common-law negligence."); Gonzalez v. UPS, 249 A.D.2d 210, 210 (1st Dep't 1998) (granting defendant summary judgment where there was "no proof demonstrating that defendant controlled or supervised the use of the machine whose negligent alteration and operation is said to have caused plaintiff's injury. . . . [D]efendant's general oversight of the timing of the work and its quality is not to be equated with . . . direct supervision and control over the manner of the work's performance necessary to establish liability under Labor Law § 200, or at common law for negligence").

The facts that Bovis sought to ensure that the subcontractors were building in accordance with the design documents, that Bovis had a general responsibility for ensuring compliance with safety regulations, that Bovis' safety representatives visited the site on a daily basis and had the authority to stop work, or that Vornado and other alter-ego employees visited the site "frequently," create no genuine issue as to whether Bovis or any other Defendant exercised anything more than general supervision. Furthermore, nothing in Bonocore's own deposition testimony indicates that any of Defendants' representatives directly supervised his work. See O'Sullivan, 28 A.D.3d at 226 (summary judgment for defendant warranted, even where defendant "conducted regular walk-throughs and, if he observed an unsafe condition, had the authority to find whoever was responsible for the condition and have them correct it or, if necessary, stop the work," "discussed covering the subject hole in the roof [through which the plaintiff later fell]" and "had inspected the plywood in question") (discussing Singh v. Black Diamonds LLC, 24 A.D.3d 138, 140 (1st Dep't 2005)); Hughes v. Tishman Constr. Corp., 40 A.D.3d 305, 308-09 (1st Dep't 2007) (no triable issue of fact for Section 200 or common-law negligence claim, where defendant

inspected construction site to monitor compliance with federal, state and local safety rules and regulations, coordinated safety meetings and had the authority to stop work for safety reasons, but did not have the authority to control the manner in which the trades performed their work or attempt to do so).

Plaintiffs rely on three First Department cases, which appear to hold that evidence that an owner or general contractor had a safety coordinator on site with the authority to stop work if a dangerous condition arose is sufficient to create a genuine issue of material fact as to whether the owner or general contractor exercised the level of supervision necessary for Section 200 or common-law negligence liability to attach.  See Gawel v. Consolidated Edison Co., 237 A.D.2d 138, 138-39 (1st Dep't 1997); Freitas v. N.Y.C. Transit Auth., 249 A.D.2d 184, 186 (1st Dep't 1998); Bush v. Gregory, 308 A.D.2d 360, 361 (1st Dep't 2003).  However, the First Department itself has explicitly repudiated these decisions, noting specifically that they "deviate[d]" from the "well-settled principle" that "liability under Labor Law § 200 or for common-law negligence may only be imposed on a general contractor or construction manager who controls the manner in which the plaintiff performed his or her work."  Hughes v. Tishman Constr. Corp., 40 A.D.3d 305, 309 (1st Dep't 2007).[4]  Accordingly, Plaintiffs' reliance on these cases is misplaced.

Because Plaintiffs have failed to proffer evidence creating a genuine issue of fact as to whether there was direct supervision on the part of any Defendant, Plaintiffs' arguments that

---

[4]      Moreover, none of the cases relied upon by Plaintiffs were affirmed by the New York Court of Appeals, whereas O'Sullivan, cited above and relied upon by the Court in this opinion, was summarily affirmed by the New York Court of Appeals.  See O'Sullivan v. IDI Constr. Co., Inc., 7 N.Y.3d 805 (N.Y. 2006); see also Reddington v. Staten Island Univ. Hosp., 511 F.3d 126, 133 (2d Cir. 2007) ("When we consider issues of New York law, our task is to determine how the New York Court of Appeals would decide them.").

various contractual safety provisions or regulations provide standards against which Defendants' conduct should be measured for Section 200 or general negligence liability purposes are unavailing. Therefore, Bonocore's claims under Section 200 of the New York Labor Law and for common-law negligence must be dismissed as a matter of law.

To the extent that Plaintiffs assert an independent cause of action arising under the OSHA regulations themselves, no such cause of action is pled in the Amended Complaint, and Plaintiffs do not cite any provision of OSHA, federal law or any other authority for the proposition that there is an independent cause of action for OSHA violations against a non-employer.  For these reasons, Defendants' motion for summary judgment is granted with respect to Plaintiffs' Section 200 and common-law negligence claims, as well as any independent OSHA claim that was intended to be asserted.

*New York Labor Law § 241(6)*

Bonocore also brings claims under Section 241(6) of the New York Labor Law.  The statute provides, in relevant part:

> All contractors and owners and their agents, . . . when constructing . . . buildings . . . , shall comply with the following requirements: . . . (6) All areas in which construction . . . work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places.  The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work . . . shall comply therewith.

N.Y. Lab. Law § 241(6) (West 2002).  To succeed on a Section 241(6) claim, a plaintiff must demonstrate a violation of specific rules and regulations promulgated by the Commissioner of the Department of Labor (the "Industrial Code"), see N.Y. Comp. Codes R. & Regs. tit. 12, § 23 et seq.

See Ross v. Curtis-Palmer Hydro-Electric Co., 81 N.Y.2d 494, 502 (N.Y. 1993).  Moreover, the

regulations relied upon must "mandat[e] compliance with concrete specifications"; alleged

violations of regulations that merely "establish general safety standards" are not actionable under

Section 241(6).  See id. at 505 (dismissing Section 241(6) claim premised on alleged violation of

regulation requiring "proper scaffolds"); see also id. at 502 ("allegations . . . which rely on claimed

failures to measure up to such general regulatory criteria as 'adequate,' 'effective' and 'proper,' are

not sufficient to give rise to a triable claim for damages under Labor Law § 241(6)").  Lastly, the

violation must be a proximate cause of the injury or a substantial factor in bringing about the

injury-causing event.  See Misirlakis v. E. Coast Entm't Props., Inc., 297 A.D.2d 312, 312-13 (2d

Dep't 2002); Locicero v. Princeton Restoration, Inc., 25 A.D.3d 664, 666 (2d Dep't 2006).

      Plaintiffs' Amended Complaint cites to the Industrial Code generally but does not

indicate which regulation they allege Defendants to have violated.  (Am. Compl. ¶ 81.)  Plaintiffs'

opposition papers, however, assert that Defendants violated Subpart 23-6.1(h) of the Industrial

Code, which provides: "(h) Tag line.  Loads which have a tendency to swing or turn freely during

hoisting shall be controlled by tag lines," N.Y. Comp. Codes R. & Regs. tit. 12, § 23-6.1(h), as well

as particular OSHA regulations.

      Bonocore's Section 241(6) claims must be dismissed to the extent they are premised

on the alleged violation of any OSHA regulation because, as explained above, a Section 241(6)

claim may only be premised on a violation of a sufficiently concrete regulation of the New York

State Industrial Code, and Plaintiffs cite to no provision of the Industrial Code that incorporates the

OSHA regulations relied upon by Plaintiffs.  See Pellescki v. City of Rochester, 198 A.D.2d 762,

763 (4th Dep't 1993) ("The Labor Commissioner's rules do not incorporate the provisions of

OSHA relied upon by plaintiffs").  Moreover, even if Plaintiffs could assert a Section 241(6) claim

premised on the violation of any OSHA regulation cited by Plaintiffs, "OSHA regulates only the relationship between employers and employees; it imposes no duty on an owner or general contractor," id., and it is undisputed that none of the Defendants was Bonocore's employer.

Bonocore's Section 241(6) claims premised on the violation of Subpart 23-6.1(h) of the Industrial Code must also be dismissed.  Subpart 23-6.1(a) specifically exempts cranes from the requirements of Subpart 23-6.1, and it is undisputed that the swaying load line itself was part of a crane.  Moreover, there was no "load" at the end of the load line at the time of the injury, and Plaintiffs cite no authority for the proposition that the hook at the end of the load line could itself constitute a "load" as defined by the regulations.  Cf. Penta v. Related Companies, L.P., 286 A.D.2d 674, 675 (2d Dep't 2001) (plaintiff who had been struck by a swinging hook at the end of the load line could not claim violation of Subpart 23-8.2(c)(3), which provides that "[l]oads lifted by mobile cranes shall be raised vertically so as to avoid swinging . . .", because it was "undisputed that the Crane was not hoisting a load at the time of the accident.").  In any event, this particular regulation is insufficiently concrete as a basis for Section 241(6) liability, as other Appellate Divisions have held.  See Smith v. Homart Dev. Co., 237 A.D.2d 77, 77 (3d Dep't 1997); Morrison v. City of New York, 5 A.D.3d 642, 643 (2d Dep't 2004).[5]  Accordingly, Defendants' motion for summary judgment is granted as to Plaintiffs' Section 241(6) claims.

---

[5]     Plaintiffs cite no authority, persuasive or otherwise, to rebut these cases cited by Defendants in their moving papers.  See Michalski v. The Home Depot, Inc., 225 F.3d 113, 116 (2d Cir. 2000) ("the holding of an intermediate appellate state court . . . is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise") (quotations and citation omitted).

*New York Labor Law § 240(1)*

Plaintiffs and Defendants cross-move for summary judgment on Bonocore's Section

240(1) claims.  New York Labor Law Section 240(1) provides, in relevant part:

> All contractors and owners and their agents, . . . in the erection . . . of a building or
> structure shall furnish or erect, or cause to be furnished or erected for the
> performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers,
> blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed,
> placed and operated as to give proper protection to a person so employed.

N.Y. Lab. Law § 240(1) (West 2002).  The statute imposes strict liability on owners, contractors

and their agents for failing to provide adequate safety devices of the type listed in the statute, if

such failure implicates certain hazards that, in turn, proximately cause injury.  See Rocovich v.

Consolidated Edison Co., 78 N.Y.2d 509, 513 (N.Y. 1991); Zimmer v. Chemung Cty. Performing

Arts, Inc., 65 N.Y.2d 513, 523-24 (N.Y. 1985).  The legislative purpose is to "protect workers by

placing ultimate responsibility for safety practices at building construction jobs where such

responsibility actually belongs, on the owner and general contractor."  Id. (citation and quotation

omitted).  "Negligence, if any, of the injured worker is of no consequence."  Id.  Furthermore, "the

duty under Section 240(1) is nondelegable and an owner or contractor is liable even [if] the job was

performed by an independent contractor over which it exercised no supervision or control."  Id.

The New York Court of Appeals has held that the statute only applies to "hazards

. . . related to the effects of gravity where protective devices are called for either because of a

difference between the elevation level of the required work and a lower level or a difference

between the elevation level where the worker is positioned and the higher level of the materials or

load being hoisted or secured."  Melber v. 6333 Main Street, Inc., 91 N.Y.2d 759, 762 (N.Y. 1998)

(quoting Rocovich, 78 N.Y.2d at 513).  The statute does not encompass

any and all perils that may be connected in some tangential way with the effects of

gravity.  Rather, the "special hazards" referred to are limited to such specific gravity-related accidents as falling from a height or being struck by a falling object that was improperly hoisted or inadequately secured. [Section 240(1)] was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker <u>from harm directly flowing from the application of the force of gravity to an object or person</u>.  The right of recovery afforded by the statute does not extend to other types of harm, even if the harm in question was caused by an inadequate, malfunctioning or defectively designed scaffold, stay or hoist.

<u>Ross v. Curtis-Palmer Hydro-Electric Co.</u>, 81 N.Y.2d 494, 501 (N.Y. 1993) (citation omitted).

Defendants argue that Bonocore's claimed injuries resulted from the swaying of the load line rather than from an elevation-related hazard that was within the scope of the statutory protection, citing a portion of Bonocore's deposition in which he testified that he was working "down below" at "street level" and did not need a "safety belt" at the time of the incident. (Bonocore Dep. at 27:16-28:2.)  The Court finds, however, that there is a genuine issue of material fact as to how the accident occurred, including as to whether an elevation-related hazard was involved.  In another portion of the deposition, Bonocore testified that he had been on top of the crane section when the accident occurred, that he "almost" fell from the crane section and that he had wrapped his legs around the crane section to keep himself "positioned."  (<u>Id.</u> at 35:20-21; 36:5.)  Bonocore has also proffered a supplemental affidavit in which he avers that he had to prevent himself from falling due to the lack of safety equipment.[6]  This evidence, construed in the light most favorable to Plaintiffs, could support a reasonable fact finder's determination that Bonocore was working in an elevated position at the time of the accident and that he was exposed to an elevation-related hazard from which safety equipment could have protected him (i.e., that

---

[6]    Defendants request that the Court exclude the Supplemental Affidavit, arguing that it contradicts the earlier deposition testimony.  Because the deposition testimony is ambiguous as to the particulars of the accident, the Court finds no contradiction warranting exclusion of the affidavit.

Bonocore's self-bracing to prevent himself from falling while dealing with the swinging load line might not have been necessary had appropriate equipment been present.).  Nor is Defendants' argument that Bonocore is precluded from recovering under Section 240(1) by his failure to mitigate his risk by letting go of the swaying load line availing.[7]  Such contributory or comparative negligence issues are unavailing to Defendants in the Section 240(1) context; a plaintiff's own conduct is irrelevant if the plaintiff meets his burden of proving injury that implicates the force of gravity and arises from the lack of an adequate safety device in connection with elevation-related work.  See Zimmer, 65 N.Y.2d at 521; Black v. Neighborhood Housing Servs., 1 N.Y.3d 280, 290-91 (N.Y. 2003) (plaintiff's negligence precludes Section 240(1) claim only when it is the sole proximate cause of the injury, where there is no demonstration of an inadequate or nonexistent safety device); Noble v. AMCC Corp., 277 A.D.2d 20, 21 (1st Dep't 2000) (permitting Section 240(1) claim and rejecting contention that plaintiff's injury was foreseeable to plaintiff because comparative negligence is no defense).

Defendants, invoking a New York Court of Appeals case interpreting Section 240(1) and a line of intermediate and lower New York state court decisions holding that proof of an actual fall is necessary for Section 240(1) liability, next argue that they are entitled to summary judgment because, while Bonocore was allegedly injured while seeking to prevent himself from falling, he did not actually fall.  In Ross v. Curtis-Palmer Hydro-Electric Co., 81 N.Y.2d 494 (N.Y. 1993), the Court of Appeals rejected the Section 240(1) claim of a worker who sought to recover for back injuries allegedly sustained when he had to work in an awkward position because of the design of an allegedly inadequate scaffold.  The Court of Appeals held that the plaintiff had no Section

---

[7]     The Court notes that it is undisputed that it was not unusual for the load line to sway.

240(1) claim as a matter of law, because the scaffold, however unsafe, served the "core objective" of Section 240(1) by preventing plaintiff from falling.  See id. at 501.  Put differently, the plaintiff's "injuries allegedly flowed from a deficiency in the device that was wholly unrelated to the hazard which brought about its need in the first instance."  Id. (citation and quotation omitted).  The admonition in Ross that the hazards contemplated by the statute "are limited to such specific gravity-related accidents as falling from a height or being struck by a falling object that was improperly hoisted or inadequately secured," id., has been construed by the Third Department to preclude Section 240(1) claims where the plaintiff did not fall from a height or was not struck by a falling object.  See Kelleher v. Power Auth., 211 A.D.2d 918, 919-20 (3d Dep't 1995) (where plaintiff was operating a drill while standing on a ladder when the ladder shifted, causing him to inadvertently place his hand on the drill as he sought to steady himself and consequently injure his fingers, claim was dismissed "in the absence of a fall"); White v. Sperry Supply and Warehouse, Inc., 225 A.D.2d 130, 133 (3d Dep't 1996) ("there is little question that plaintiff sustained his injuries in an attempt to avoid falling off of the roof and into the vat of tar below and, in that sense, the force of gravity--or perhaps more appropriately, the fear of gravity--arguably played a role in his accident.  The fact remains, however, that plaintiff neither fell from an elevated worksite nor was struck by a falling object, and the connection between his accident and the force of gravity is, in our view, tangential at best"); see also Torino v. Speyer, 289 A.D.2d 4 (1st Dep't 2001) (dismissing Section 240(1) claim where plaintiff alleged that he was standing on a wobbly platform lift when his fingers became wedged between a piece of sheetrock and citing Kelleher with approval); Rodriguez v. OD&P Constr., Inc., 194 Misc.2d 284, 292 (N.Y. Sup. Ct. 2002) (noting that a fall is specifically required under Third Department Section 240(1) jurisprudence, discussing Torino and concluding that the First Department had since distanced itself from Torino).

Bonocore, however, marshals several New York cases from the First and Fourth Departments permitting a Section 240(1) claim to lie where injuries allegedly arose from the plaintiff's attempts to prevent a fall.  Plaintiffs argue that, under this case law, they are entitled to recover under Section 240(1) because Bonocore's injuries resulted from the lack of safety equipment, which caused him to grapple onto the crane section in order to prevent a fall and, in conjunction with his attempts to secure the swaying load line, resulted in injury.  See, e.g., Lopez v. Boston Props. Inc., 41 A.D.3d 259, 259-60 (1st Dep't 2007) (claim permitted where plaintiff injured himself when reaching for a bucket filled with 200 pounds of materials in order to prevent the bucket from falling on top of a coworker); Suwareh v. State of New York, 24 A.D.3d 380, 381 (1st Dep't 2005) (claim permitted where plaintiff, "[w]hile trying to free the bucket, . . . lost his balance, and, as he leaned back so as not to fall off the roof, lost control of the bucket, which spilled hot tar onto his feet, burning them"); Fernandes v. Equitable Life, 4 A.D.3d 214, 215 (1st Dep't 2004) (where plaintiff "lost balance" as a result of wobbly ladder, "It does not avail defendants that plaintiff did not actually fall off of the ladder but instead was injured in preventing himself from falling"); Pesca v. City of New York, 298 A.D.2d 292, 293 (1st Dep't 2002) ("Although plaintiff did not fall from the ramp, the injuries he allegedly sustained in preventing himself from falling may be compensable" under Section 240(1)); Noble v. AMCC Corp., 277 A.D.2d 20, 20-21 (1st Dep't 2000) (claim permitted, where plaintiff "did not fall to the ground but was able to hoist himself back onto the boiler, sustaining injuries to his back in the process"); Milligan v. Allied Builders, Inc., 34 A.D.3d 1268, 524 (4th Dep't 2006) (claim precluded because plaintiff "was not injured while falling from, or attempting to prevent himself from falling from, the scaffold"); Franklin v. Dormitory Auth., 291 A.D.2d 854, 854 (4th Dep't 2002) (claim permitted where, while on scaffold, plaintiff stepped onto a plank that went up in the air, plaintiff fell

backward but was prevented from falling because his left leg became entangled in the scaffolding);
Ray v. Niagara Mohawk, 256 A.D.2d 1070, 1070-71 (4th Dep't 1998) (claim permitted where
plaintiff was working on utility pole when portion of pole on which his foot was placed came loose,
his left foot slipped, and plaintiff "injured his left shoulder when he grabbed hold of the wire above
him to prevent himself from falling"); Adams v. North-Start Constr. Co., Inc., 249 A.D.2d 1001,
1001 (4th Dep't 1998) (claim permitted where plaintiff was standing on scaffold whose planks
cracked, causing him to lose balance and "flip back" in order "to prevent himself from falling to the
floor below," causing injury).

When the Court considers issues of New York law, its "task is to determine how the
New York Court of Appeals would decide them." Reddington v. Staten Island Univ. Hosp., 511
F.3d 126, 133 (2d Cir. 2007). "Decisions of New York's intermediate appellate courts are 'helpful
indicators' of how the Court of Appeals would decide, but [a federal court is] not strictly bound by
decisions of the Appellate Division . . . ." Id. (quotations and citations omitted).

The Court has considered extensively the numerous decisions cited by both sides,
including the cases discussed above, and is persuaded that the Court of Appeals would not hold that
Bonocore's Section 240(1) claims are precluded as a matter of law simply because he did not
actually fall and hit the ground. As explained above, the Court of Appeals has held that the hazards
contemplated by Section 240(1) "are limited to such specific gravity-related accidents as falling
from a height or being struck by a falling object that was improperly hoisted or inadequately
secured." Ross, 81 N.Y.2d at 501. The references to falling persons and objects in this definitional
phrase are presented in the form of exemplars (i.e., "such gravity-related accidents as"). Given the
statute's strict focus on the adequacy of safety devices used to reduce elevation-related risk and the
Court of Appeals' interpretive emphasis on gravity as a force in a covered elevation-related

accident, it appears to this Court logical that an injury caused by an effort to resist the force of

gravity that was necessitated by the inadequacy or absence of elevation-related safety equipment

would be well within the scope of covered hazards, notwithstanding that the injured person's self-

protective efforts prevented the potentially more serious consequence of a fall to the ground.  See

Rodriguez, 194 Misc.2d at 293 ("Suppose for example that the ladder collapsed . . . and he injured

himself while hanging from the ceiling.  Should plaintiff be denied relief simply because he failed

to fall to the ground?  That would be carrying the words of [various Court of Appeals cases] to an

irrational conclusion and one, which in the opinion of this court, is inconsistent with the legislative

intent.").

       Unlike the situation in Ross, where the equipment provided was sufficient to serve

the "core objective" of preventing the worker from falling and where the injuries arose from the

claimant's maintenance of a fixed, contorted position, Plaintiff does not claim that his injuries arose

from any fixed positioning of his body that he felt he was forced to maintain while sitting atop the

crane section.  Rather, the gravamen of Plaintiff's claim here is that the absence of safety

equipment while he was working with a swinging load line caused a loss of balance requiring him

to use his own body to protect himself against falling to the ground – in other words, that his injury

was the gravity-related result of the Defendants' failure to provide protections addressing the

statute's core objective.  See Ross, 81 N.Y.2d 494, 501 ("it cannot be said that the device did not

serve the core objective of Labor Law § 240(1)--preventing plaintiff from falling down the shaft.  In

that regard, the device did not malfunction and was not defective in its design."); Suwareh, 24

A.D.3d at 382 (distinguishing Ross, noting that "[t]here was no loss of balance nor any spilling or

falling of materials.").  Plaintiffs proffer evidence that Bonocore was originally seated on the crane

section, with both legs wrapped around a part of the section, when he was pulled to one side to the

point where half of his body was hanging off of the section while he was grabbing hold of the crane

section with his leg to prevent himself from falling and hitting the ground.  Bonocore avers that he

had to hold on in this manner because he was not provided proper safety equipment which would

have prevented him from falling.  As the safety devices, or the lack thereof, failed to prevent

Bonocore from falling, the Court of Appeals' holding in Ross does not preclude a viable Section

240(1) claim here.

        Plaintiff's Section 240(1) claim must nonetheless be dismissed against some of the

Defendants, however, because he has failed to proffer evidence that they are entities covered by the

strict liability provisions of the statute.  A plaintiff may only bring a Section 240(1) claim against

owners, contractors, or agents of an owner or contractor, and Plaintiffs fail to proffer any evidence

that Defendants 731 Residential Holding, 731 Commercial Holding or 731 Retail One, were

owners, contractors, or agents of an owner or contractor.  Plaintiffs proffer nothing to rebut the

deeds proffered by Defendants, which demonstrate that 731 Residential Holding and 731

Commercial Holding transferred ownership of the property prior to the accident, nor is there any

evidence that they were contractors or agents.  See Adamkiewicz v. Lansing, 288 A.D.2d 531 (3d

Dep't 2001) (dismissing Section 240(1) claims against defendant which had transferred ownership

of property months before the accident).  No evidence whatsoever is proffered regarding 731 Retail

One.  Accordingly, Plaintiffs' Section 240(1) claims against Defendants 731 Residential Holding,

731 Commercial Holding and 731 Retail One are dismissed.  Because all of Bonocore's claims

have been dismissed as to Defendants 731 Residential Holding, 731 Commercial Holding and 731

Retail One, Plaintiff Lisa Bonocore's derivative claims as to those Defendants are dismissed as

well.

        The parties' respective motions for summary judgment on Bonocore's Section

240(1) claims as to the remaining Defendants are denied.  The Court has reviewed the proffered

evidence thoroughly and concludes that genuine issues of material fact preclude the summary

resolution of Bonocore's Section 240(1) claims against the remaining Defendants, including but not

limited to issues such as whether the Defendants were owners, contractors, or agents of an owner or

contractor at the time of the incident, whether safety equipment should have been provided to

Bonocore, whether the failure to provide safety equipment caused Bonocore's injuries, and whether

the injuries were foreseeable.

*Applications to Strike Submissions*

   The Court need not address at this stage the admissibility of Defendants' proffered

accident reports, as genuine issues of material fact would exist even if such reports were excluded,

given, inter alia, Bonocore's arguably inconsistent deposition testimony concerning his need for

specific safety devices and the specific circumstances existing at the time of the accident (i.e.,

whether he was on the ground or 10 feet above ground).  The parties' requests to strike submissions

made in connection with this motion practice are therefore denied, without prejudice to the future

filing of applications to preclude proffers of the evidentiary elements of these submissions in

connection with further proceedings in this case.

CONCLUSION

   For the foregoing reasons, Defendants' motion for summary judgment is granted in

part and denied in part, and Plaintiffs' cross-motion for partial summary judgment is denied.  All of

Plaintiffs' claims against Defendants 731 Residential Holding, LLC, 731 Commercial Holding,

LLC, and 731 Retail One LLC are dismissed, and Plaintiff Orazio Bonocore's Section 200, Section

241(6) and common-law negligence claims as against all Defendants are also dismissed.

Bonocore's Section 240(1) claim against Defendants Vornado Realty Trust, Bovis

Lend Lease, Inc., Alexander's Inc., 731 Residential, LLC, 731 Commercial, LLC and 731 Limited

Partnership, and Plaintiff Lisa Bonocore's attendant derivative claim, remain.

The parties must promptly meet with Magistrate Judge Gorenstein to discuss

settlement. A separate scheduling order will be entered. The Clerk of Court is respectfully

requested to terminate Docket Entry Nos. 25 and 32.

SO ORDERED.

Dated:      New York, New York
            March 13, 2009

LAURA TAYLOR SWAIN
United States District Judge